Filed 10/12/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| STÄDEL ART MUSEUM,<br><br>        Plaintiff and Appellant,<br>v.<br><br>THOMAS MULVIHILL,<br><br>        Defendant and Respondent. | A165397<br><br>(Alameda County<br>Super. Ct. No. RP-21-094211) |

Städel Art Museum (the Museum) is the sole residuary beneficiary of the Peter Boesch Revocable Trust, dated March 1, 1994 (Boesch Trust). The principal assets of the Boesch Trust are a 50 percent ownership interest in each of four real properties located in San Francisco (hereafter the subject properties). The other 50 percent interests are held by the Darril Hudson Revocable Trust, dated March 9, 1994 (Hudson Trust), whose beneficiaries are the San Francisco Conservatory of Music, San Francisco-Marin Food Bank, International House at UC Berkeley (I-House), and the National LGBTQ Task Force.

Thomas Mulvihill, successor trustee of both trusts, initiated the underlying action by filing a petition under section 17200 of the Probate Code[1] seeking instructions from the probate court due to "a potential conflict in administering the trusts in the best interests of the respective beneficiaries." According to the petition, the Museum has requested that the

---

[1]    Further unspecified statutory references are to the Probate Code.

1

acquisition indebtedness on the subject properties be paid off in full and that the Boesch Trust make an in-kind distribution of its interests to the Museum so that the Museum may, as a tax-exempt organization, sell the interests without suffering certain tax consequences. The Hudson Trust beneficiaries, which do not face the same tax consequences, prefer that the trusts sell the subject properties undivided and distribute the proceeds. After a hearing on the petition, the probate court instructed Mulvihill to immediately sell the properties and distribute the proceeds to the respective beneficiaries.

On appeal, the Museum makes three contentions. First, the probate court's interpretation of the Boesch Trust was erroneous because it improperly rewrote trust language to require the trustee to immediately sell the subject properties instead of requiring the trustee to restructure the distribution to make an in-kind distribution to minimize tax consequences. Second, the court improperly considered the interests of the Hudson Trust beneficiaries in interpreting the Boesch Trust. Third, the court should have removed Mulvihill as trustee and appointed an independent special trustee due to Mulvihill's conflicted dual trusteeship.

We decline to reach the Museum's third argument, as it is being presented for the first time on appeal. But we agree with the Museum that in light of a trust provision granting the trustee "sole discretion" to distribute trust property in cash or in kind, the probate court erred in interpreting the trust instrument to require an immediate sale of the subject properties. Given that Mulvihill never purported to exercise this discretion, we will reverse and remand with directions that, barring any conflict of interest matters that may arise on remand, Mulvihill be instructed to exercise his discretion to grant or deny the Museum's request for an in-kind distribution of the trust's property interests. In so concluding, we do not endorse the

2

Museum's argument that the trust instrument necessarily requires an in-kind distribution, and we leave it to the trustee to decide the Museum's requests in the reasonable exercise of his discretion.

**FACTUAL AND PROCEDURAL BACKGROUND**

Peter Boesch and Darril Hudson were unmarried partners. In March 1994, Boesch established the Boesch Trust, making himself the initial trustee and funding the trust with his 50 percent interest in each of the subject properties. Shortly thereafter, Hudson established the Hudson Trust, which he likewise funded with his own 50 percent interest in each of the subject properties.

Boesch passed away in 1995. Hudson passed away in 2019. Mulvihill is presently the successor trustee of both the Boesch and Hudson Trusts and the "Special Trustee" of the Boesch Trust.

**A. Key Provisions of the Boesch Trust**

Part three of the Boesch Trust governs the distribution of assets upon Boesch's death in the event Hudson survived Boesch.

As relevant here, part three, article third, paragraph C,[2] provides that upon Hudson's death (or Boesch's death if Hudson were to predecease him), the trust estate "shall be distributed" in the following manner. First, monetary gifts would be made to various named individuals. Second, gifts of tangible personal property would be made to various named individuals and entities. Third, as to the balance of the estate, subparagraph 3, states: "With due consideration for the real estate market, my trustee is requested to sell the real property and items of value left over after above gifts. The proceeds

---

[2]     For ease of reference, we henceforth cite to the provisions of the Boesch Trust using numbers and letters separated by periods. For example, part three, article third, paragraph C will be cited as part 3.3.C.

3

from such sale shall be divided as follows: [¶] (a) 5% is to go to David James Chick of Sebastopol, CA, if he is then living, or, if he is not, this gift shall lapse. [¶] (b) The balance of the Trust assets, including any lapsed gifts, is to go to the City of Frankfurt-am-Main, Germany to be kept in a special trust for the Städel Art Museum. . . . The purpose is to use the funds to keep the Museum open free at hours it would not otherwise be open. The gift can also be used to acquire additional artwork for the Museum if adequate operation funds are available to the Museum from other sources. In the event that DARRIL HUDSON has not survived me, it is my intention that this gift be deductible by my estate under Code § 2055.[3] In the event that a gift to the City of Frankfurt-am-Main is not deductible, I direct and give my Trustee the special power, if possible, to restructure this gift for the benefit of the Städel Museum so that it is deductible under § 2055. If DARRIL HUDSON has survived me, I acknowledge that taxes would have been paid at my death and, therefore, a deductible gift would not be necessary."

Part five of the Boesch Trust addresses the trustee's powers. Part 5.1.B.1 states that "[u]pon any division or partial or final distribution of the trust estate or any part thereof, my Trustee, in my Trustee's sole discretion, may make the division or distribution in cash or in kind, including undivided interests in kind, either pro rata or non pro rata, at reasonable date or dates of division or distribution values as determined by my Trustee, with or without adjustment for income tax basis, and may make such sales of the property of the trust as my Trustee may deem necessary to make division or distribution."

---

[3]    The Boesch Trust specifically defines "Code" to mean "the United States Internal Revenue Code of 1986, as amended from time to time."

4

**B. Section 17200 Petition**

In April 2021, Mulvihill filed a petition under section 17200, subdivision (b)(6), seeking instructions from the probate court as to the manner of distributing the Boesch Trust's assets. The petition alleges that the sole remaining assets of the Boesch Trust are the subject properties, which "are co-owned with the Hudson Trust," and that "[f]or all practical purposes," the sole residuary beneficiary of the Boesch Trust is the Museum,[4] while the beneficiaries still owed distributions under the Hudson Trust are the San Francisco Conservatory of Music, San Francisco Marin Food Bank, I-House, and the National LGBTQ Task Force.

The petition further alleges that Mulvihill is trustee of both the Boesch and Hudson Trusts and is "confronted with a potential conflict in administrating the trusts in the best interests of the respective beneficiaries" due to differing preferences and disparate tax consequences that may arise from the sale of the subject properties. The Museum has requested that Mulvihill pay off "the full acquisition indebtedness against each property—not just the Boesch Trust's 50% share of the indebtedness"—and make an in-kind distribution of the Boesch Trust's 50 percent interest directly to the Museum, free and clear of all mortgage debt. Mulvihill alleges on information and belief that this arrangement would allow the Museum, a tax-exempt entity not subject to capital gains taxes on the sale of its own assets, to sell its share of the subject properties without incurring state and federal capital gains taxes. Mulvihill further alleges on information and belief that if the Boesch Trust's share of the subject properties is instead sold directly by

---

[4]    Specifically, the petition alleges that the gift to David James Chick lapsed because Chick predeceased Hudson, and the intended gift to the City of Frankfurt was waived by the city under a 2007 written agreement with Hudson, making the gift payable directly to the Museum.

the Boesch Trust, the trust will suffer a substantial tax consequence because its 50 percent interest "has a low cost basis (due in large part to the depreciation taken in the 24 years since Mr. Boesch's death in 1995)," which will significantly reduce the distribution to the Museum.[5]  In contrast, the Hudson Trust's 50 percent interest only "recently received a step-up in basis at Mr. Hudson's death in 2019," and thus, the Hudson Trust allegedly will not suffer the same tax consequences as the Boesch Trust from a direct sale of the subject properties.

The petition further alleges that while the Boesch and Hudson Trusts both grant Mulvihill the discretion to make distributions in kind, compliance with the Museum's requests "may potentially impair the financial interests of the Hudson Trust's beneficiaries.  [¶] . . . Apart from requiring the advancement of cash assets to pay off the mortgage debt, . . . a sale solely of the Hudson Trust's fractional interests in the Properties may potentially yield substantially less than fifty (50) percent of the Properties' fair market values, to the detriment of the Hudson Trust's beneficiaries."  "[¶] . . . Alternatively, if [Mulvihill] delays a sale of the Properties until such time as the mortgage debt is paid in full, and/or the [Museum] has been distributed the Boesch Trust's interests in the Properties, the delay may be potentially detrimental to the Hudson Trust's beneficiaries if market conditions are not then sufficiently favorable to overcome the cost associated with such a delay."

As the petition explains, Mulvihill's concern is that "the potential impairment of one trust's interests in theory may give rise to an otherwise wholly avoidable allegation of a breach of fiduciary duty subjecting

---

[5]     Generally, "the basis of property in the hands of a person acquiring the property from a decedent or to whom the property passed from a decedent" is "the fair market value of the property at the date of the decedent's death." (26 U.S.C. § 1014(a)(1).)

[Mulvihill] to potential personal liability." Accordingly, Mulvihill requested an order from the probate court instructing him as to (1) the resolution of the mortgage debt against the subject properties; (2) the manner of distribution to be made to the Museum pursuant to the terms of the Boesch Trust; and (3) an allocation of his attorney fees and costs between the two trusts.

## C. Response to Petition

The National LGBTQ Task Force filed a written response to the petition, acknowledging the different tax situations of the two trusts.[6] Nonetheless, it informed the probate court that the Hudson Trust beneficiaries "do not want in-kind distributions; rather they want Mulvihill, as he has done in the past, to sell the properties and distribute the net cash proceeds to them." Thus, the National LGBTQ Task Force requested that the court instruct Mulvihill to place all four subject properties "on the market as a whole and sell them."

I-House, San Francisco-Marin Food Bank, and San Francisco Conservatory of Music each filed joinders to the National LGBTQ Task Force's response. The record on appeal contains no written response to the petition from the Museum.

## D. Hearing and Ruling

After a hearing on the petition, the probate court issued its written order making the following relevant findings : (1) "Based on the Court's

---

[6] Specifically, the National LGBTQ Task Force observed that "since Peter Boesch died in 1995 and Darrill Hudson in 2019, the income tax basis of each trust's half is radically different. Not only was the Boesch Trust basis set in 1995, when property values were much lower, but the Boesch Trust has also depreciated the properties for 24 more years, resulting in even less basis. As a result, a sale of a parcel will result in a much higher capital gain for the Boesch Trust, and ultimately its beneficiary, than for the Hudson Trust and its beneficiaries."

review of the whole of [the Boesch Trust], the Court finds the intention of the trustor as expressed in the trust instrument is for the trustee to sell the trust's four (4) real properties and distribute the proceeds of the sales in the manner provided by Part [3.3.C.3] of the trust"; (2) "The provision of Part [3.3.C.3] of [the Boesch Trust] stating that 'my trustee is *requested* to sell the real property' is construed to mean 'my trustee is *instructed* to sell the real property'" (italics added); and (3) "The terms of [the Boesch Trust] do not require a distribution *in kind* of the trust's four (4) real properties upon consideration of market conditions or tax consequences anticipated from a distribution of sales proceeds."

Based on these findings, the probate court instructed Mulvihill "to sell forthwith the four (4) real properties currently held in [the Boesch Trust] and to make the distributions to the trust beneficiary in accordance with Part [3.3.C.3] of said trust. Petitioner Trustee shall make every reasonable effort, consistent with his fiduciary obligations, to complete the sales of the four (4) real properties and distributions to the beneficiary within the 2022 tax year."

The Museum timely appealed.

DISCUSSION

## A. Preliminary Matters

We start by addressing two preliminary matters raised in the briefing. The first is whether I-House was permitted to file a respondent's brief in this appeal. The second is whether the Museum forfeited its appellate claims by failing to first present them to the probate court.

### 1. *I-House's Brief is Properly Considered*

The Museum contends I-House's respondent's brief should be rejected because I-House "has no standing or interest" in how the Boesch Trust should be interpreted, as I-House is not a trustee or beneficiary of the Boesch Trust

8

and its sole interest in this case is as a beneficiary under the wholly separate Hudson Trust. I-House responds that it was permitted to submit a respondent's brief in this appeal because it is a "party" within the meaning of California Rules of Court, rule 1.6. Alternatively, I-House moves for leave to present the same arguments in an amicus curiae brief.

California Rules of Court, rule 8.200 authorizes the filing of "[p]arties' briefs," including the "appellant's opening brief," "respondent's brief," and appellant's reply brief. (Cal. Rules of Court, rule 8.200(a)(1)–(3).) " 'Appellant' means the appealing party," and " '[r]espondent' means the adverse party." (Cal. Rules of Court, rule 8.10(1), (2).) A " '[p]arty' is a person appearing in an action." (Cal. Rules of Court, rule 1.6(15).)

Based on these rules, we conclude I-House is permitted to submit a respondent's brief. I-House is a "party" in this case because it appeared in the action by joining the National LGBTQ Task Force's response to the petition and appearing at the petition hearing. (Cal. Rules of Court, rule 1.6(15).) I-House is also a "[r]espondent" in this appeal because it is an "adverse party" to the Museum. (Cal. Rules of Court, rule 8.10(2).) The Museum's arguments to the contrary are unavailing, as I-House's status as a beneficiary under another trust does not change either I-House's party status or the adversity of its position vis-à-vis the Museum on the correct interpretation of the Boesch Trust. Accordingly, we accept I-House's respondent's brief and deny, as moot, its motion for leave to file an amicus curiae brief.

## 2. *The Petition Preserved the Museum's Trust Interpretation Contention*

I-House contends the Museum forfeited its contentions on appeal by failing to present them to the probate court below in a brief or in written or oral objections. Mulvihill similarly argues that the Museum is precluded

9

from raising the issue of his removal as trustee for the first time on appeal. We agree in part.

"As a general rule, a claim of error will be deemed to have been forfeited when a party fails to bring the error to the trial court's attention by timely motion or objection." (*Avalos v. Perez* (2011) 196 Cal.App.4th 773, 776.) An appellant must also provide an adequate record to demonstrate the purported error (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574), and generally, "[a] proper record includes a reporter's transcript or a settled statement of any hearing leading to the order being challenged on appeal" (*Elena S. v. Kroutik* (2016) 247 Cal.App.4th 570, 574). Here, the record on appeal contains no written response by the Museum to Mulvihill's petition and no reporter's transcript of the hearing on the petition.

Despite these circumstances, we conclude the record before us is adequate to preserve the Museum's main contention on appeal regarding the proper interpretation of the Boesch Trust. Specifically, the petition itself set forth the Museum's contentions in sufficient detail to permit the probate court to rule on the matters in dispute, and the court's order sets forth the grounds for its decision. Furthermore, because the trust interpretation question here does not turn on the resolution of factual disputes, we independently interpret the trust instrument. (See *Estate of Dodge* (1971) 6 Cal.3d 311, 318.)

We reach a different conclusion for the issue of trustee removal, as the petition did not set forth any contention regarding removal of Mulvihill as trustee on conflict-of-interest grounds or appointment of an independent special trustee in his place. Though the Museum urges us to exercise our discretion to reach the issue for the first time on appeal, we decline to do so

10

given our conclusion to reverse and remand on other grounds, which we now discuss.

## B. The Trust Instrument Grants Sole Discretion to the Trustee in Dividing or Distributing the Subject Properties

Under section 17200, a trust beneficiary may petition the probate court regarding matters affecting "the internal affairs of the trust." (§ 17200, subd. (a).) Among other powers, the probate court has the authority to determine "questions of construction of a trust instrument" and instruct the trustee. (*Id.*, subds. (b)(1), (6).)

" '[T]he primary rule in construction of trusts is that the court must, if possible, ascertain and effectuate the intention of the trustor or settlor.' [Citation.] 'The intention of the transferor as expressed in the [trust] instrument controls the legal effect of the dispositions made in the instrument.' " (*Crook v. Contreras* (2002) 95 Cal.App.4th 1194, 1206.) "The centerpiece of interpretation, of course, is the language contained in . . . the trust document. One of the axioms is that words are to be taken in their ordinary and grammatical sense, unless a clear intention to the contrary can be ascertained." (*Wells Fargo Bank v. Huse* (1976) 57 Cal.App.3d 927, 932.)

Furthermore, "[t]he words of an instrument are to receive an interpretation that will give every expression some effect, rather than one that will render any of the expressions inoperative." (§ 21120.) "All parts of an instrument are to be construed in relation to each other and so as, if possible, to form a consistent whole. If the meaning of any part of an instrument is ambiguous or doubtful, it may be explained by any reference to or recital of that part in another part of the instrument." (§ 21121.)

Where, as here, the interpretation of a trust instrument does not turn on the credibility of extrinsic evidence or require resolution of conflicts in the evidence, it presents a question of law. (*Burch v. George* (1994) 7 Cal.4th 246,

11

254.) Accordingly, we are not bound by the trial court's interpretation, and we must independently construe the instrument in question. (*Estate of Dodge*, *supra*, 6 Cal.3d at p. 318.)

As previously noted, part 3.3.C.3 of the Boesch Trust states that upon the later of Boesch's or Hudson's deaths, after the distribution of monetary and tangible gifts to certain named individuals and entities, the remainder of the trust estate is to be distributed as follows: "With due consideration for the real estate market, my trustee is requested to sell the real property and items of value left over after above gifts." Plainly, this clause reflects Boesch's general intent that the subject properties be sold with the remainder of the trust estate.

That said, the Museum argues, and we agree, that the word "requested" is not, in its common and ordinary sense, reasonably construed as an unwavering command. A permissive construction of the word "requested" is supported not only by its common meaning but by other language in the Boesch Trust, all of which must be construed together. (§ 21121). For instance, the prefatory language, "[w]ith due consideration for the real estate market," appears to give the trustee control over the timing and circumstances of any sale of the subject properties based on the conditions of the housing market, which could include forestalling a sale while market conditions are unfavorable. This language is inconsistent with a construction of the provision as a mandate to immediately sell upon Hudson's death.

Additionally, part 5.1.B.1 broadly grants the trustee the "sole discretion" to make any division or distribution "in cash or in kind" "[u]pon any division or partial or final distribution of the trust estate or any part thereof." "Sole discretion is the equivalent of absolute, unlimited or uncontrolled discretion, and simply indicates that the judgment of the

12

trustee[], exercised in good faith, shall control." (*Estate of Gross* (1963) 216 Cal.App.2d 563, 567.)

Read together, the trust provisions permit the trustee, upon the later of Boesch's or Hudson's death, to exercise his discretion to make an in-kind distribution of the trust's ownership share of the subject properties to the beneficiary in lieu of a direct sale and distribution of proceeds. Were we to construe the "request[]" to sell the subject properties as a strict command, it would not only contravene the ordinary sense of the word, but it would also render inoperative this conferral of broad discretion to the trustee, a construction we must avoid. (§ 21120.)

In the instant matter, the petition makes clear that Mulvihill never purported to exercise the discretion conferred upon him by the trust instrument to grant or deny the Museum's request for an in-kind distribution of the trust's property interests. Under these circumstances, and in light of our interpretation of the trust instrument, we conclude the appropriate response to the petition would have been to instruct Mulvihill to exercise the discretion conferred upon him under part 5.1.B.1 of the Boesch Trust, consistent with his overall duty to administer the trust according to its terms and applicable law. (See §§ 16000, 16002.)

The Museum additionally contends the probate court improperly considered the interests of the Hudson Trust beneficiaries in interpreting the Boesch Trust. We see no indication of that in the record, as the court's order specifically states its decision was based "on the Court's review of the whole of The Peter Boesch Revocable Trust Dated March 1st, 1994." That said, the petition makes readily apparent that Mulvihill's reluctance to act on the Museum's requests was due to "a potential conflict" he perceived arising out of his dual trusteeship.

On this score, the law is settled that a "trustee has a duty to administer the trust solely in the interest of the beneficiaries." (§ 16002, subd. (a); see *Uzyel v. Kadisha* (2010) 188 Cal.App.4th 866, 905 [trustee's duty of loyalty]; see also § 16004, subd. (a) [trustee has duty not to deal with trust property for any "purpose unconnected with the trust"].) "Although this duty is frequently invoked as a protection against creating conflicts between a trustee's fiduciary duties and personal interests, it is also understood to protect against improper influence generally. Thus, actions by a trustee may be considered improper if they are taken 'either for the purpose of benefiting a third person (whether or not a party to the transaction) rather than the trust estate or for the purpose of advancing an objective other than the purposes of the trust.' " (*O'Neal v. Stanislaus County Employees' Retirement Assn.* (2017) 8 Cal.App.5th 1184, 1209.)

Here, the petition alleges, and no one disputes, that the sole remaining beneficiary of the Boesch Trust is the Museum. And notably, the Boesch Trust instrument contains no mention of the Hudson Trust or its beneficiaries. Under these circumstances, the Hudson Trust beneficiaries are properly viewed as third persons vis-à-vis the Boesch Trust, and as such, their interests should not bear on Mulvihill's exercise of discretion to grant or deny the Museum's requests.

While we agree with the Museum that the Boesch Trust cannot be interpreted as mandating an immediate sale, we cannot side with its further contention that the trust instrument *requires* the trustee to restructure the distribution to the Museum in order to avoid the capital gains tax consequences anticipated here.

To begin with, the Museum's interpretation is at odds with trust language expressly granting the trustee the "sole discretion" to make

14

distributions "in cash or in kind, . . . with or *without adjustment for income tax basis*." (Italics added.) The Museum makes no attempt to reconcile its argument with this grant of discretion. Second, the Museum's reliance on the second half of part 3.3.C.3.b—which calls for the trustee to make the distributions to the Museum deductible under the federal income tax code—is misplaced because that directive, by its terms, states it applies "[i]n the event that DARRIL HUDSON has not survived me," which did not happen. Moreover, the trust makes no mention of capital gains tax implications arising from a long elapse of time between Boesch's and Hudson's deaths, a circumstance that does not appear to have been expressly contemplated by the settlor in this or any other provision of the Boesch Trust.[7] Though the trust instrument may reasonably be read to reflect the settlor's general desire that tax burdens be minimized where possible, the language of the trust is nonetheless express in its contemplation that Mulvihill retains broad discretion to determine, reasonably and with due care (§§ 16040, subd. (a), 16080), whether the Museum's requests will, on balance, effectuate the settlor's intent and the purposes of the trust.

For the foregoing reasons, we will vacate the probate court's order instructing Mulvihill to immediately sell the subject properties and distribute the proceeds to the beneficiaries. On remand, the court should consider any

---

[7] The Museum also relies on part 6.2 of the Boesch Trust, which provides that the trustee "shall have sole discretion, but shall not be required" to make adjustments in the rights of beneficiaries to compensate for certain effects of tax decisions or elections. But the Museum concedes this provision is "not directly related to the distribution of the Properties," and furthermore, the Museum fails to address the effect of the language "shall not be required." The Museum also suggests that the prefatory clause of part 3.3.C.3, "[w]ith due consideration for the real estate market," reflects the settlor's intent to minimize tax burdens, but the clause makes no mention of tax consequences, particularly the capital gains tax scenario at issue here.

15

properly presented claim that Mulvihill should be barred from acting on the Museum's requests due to a conflict of interest. (See Discussion, pt. C., *post*.) In the event Mulvihill is not found barred, the probate court is directed to issue a new order instructing Mulvihill to exercise the discretion granted to him under part 5.1.B.1 of the Boesch Trust, consistent with his overall duty to administer the trust according to its terms and applicable law. (See §§ 16000, 16002.)

## C. Considerations Regarding Removal of Trustee

As previously noted, the issue whether the trustee should be removed has not been considered by the probate court. (See Discussion, pt. A.2., *ante*). In the event the issue is properly presented on remand, we offer a few observations.

"A trustee may be removed in accordance with the trust instrument, by the court on its own motion, or on petition of a settlor, cotrustee, or beneficiary under Section 17200." (§ 15642, subd. (a).) The statutory grounds for removal of a trustee by the probate court include "[w]here the trustee fails or declines to act" (*id.*, subd. (b)(4)), and "[f]or other good cause" (*id.*, subd. (b)(9)).[8]

---

[8] The Boesch Trust does not expressly provide for removal of an acting trustee. Instead, part 5.2.E states that "[i]f every acting Trustee is under a disability as set forth in this Article, such decision or action shall be made or taken by my Special Trustee." The disqualifying disabilities generally pertain to circumstances in which the trustee stands to personally benefit from the discharge of its duties. Elsewhere, the trust instrument provides that if Mulvihill "for any reason fails or ceases to serve as" trustee or special trustee and fails to a designate a successor, the trustee "shall" petition the probate court for appointment of a "successor" trustee or special trustee. The application of these provisions is unclear given Mulvihill's role as both the sole acting trustee and special trustee of the Boesch Trust.

16

The trial court's power to remove a trustee "is a power that the court should not lightly exercise, and whether or not such action should be taken . . . rests largely in the discretion of the trial court. Furthermore, the court will not ordinarily remove a trustee appointed by the creator of the trust" (*Estate of Bixby* (1961) 55 Cal.2d 819, 826), and will "never remove [a trustee named by the settlor] for potential conflict of interest but only for demonstrated abuse of power detrimental to the trust" (*Estate of Gilliland* (1977) 73 Cal.App.3d 515, 528).

We have not been made aware of any decisional law addressing conflict-of-interest principles where an individual concurrently serving as trustee of two trusts is presented with different preferences among the respective beneficiaries as to the distribution of property co-owned by the trusts. Though not cited by the parties, section 16005 addresses certain dual trusteeship conflicts and provides that "[t]he trustee of one trust has a duty not to knowingly become a trustee of another trust adverse in its nature to the interest of the beneficiary of the first trust, and a duty to eliminate the conflict or resign as trustee when the conflict is discovered." While we express no opinion on whether the dispute in question renders one trust "adverse in its nature to the interest of the beneficiary of" the other trust within the meaning of section 16005, or whether a duty has arisen on Mulvihill's part to eliminate the conflict or resign as trustee, we encourage the parties and the probate court on remand to explore these and other properly presented matters relating to the conflict-of-interest issue.

## DISPOSITION

The order of the probate court is vacated, and the matter is remanded. On remand, the court should consider any properly presented claim that Mulvihill should be barred from acting on the Museum's requests due to a

17

conflict of interest or other applicable circumstances. In the event Mulvihill is not found barred from acting, the probate court is directed to issue a new order instructing Mulvihill to exercise the discretion granted to him under part five, article first, paragraph B.1 of the Boesch Trust, consistent with his overall duty to administer the trust according to its terms and applicable law. (See §§ 16000, 16002.) In the event Mulvihill is found barred, the court should proceed with his replacement and take any further actions as necessary for the administration of the trust, consistent with the terms of the trust instrument and the views expressed in this opinion. In the interests of justice, the parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)


_____

Fujisaki, J.


WE CONCUR:


_____

Tucher, P.J.


_____

Petrou, J.

Trial Court:        Alameda County Superior Court

Trial Judge:        Hon. Ruben Sundeen

Counsel:            McDermott Will & Emery, Jessica J. Thomas, Laurelle
                    Gutierrez and Jodi Benassi for Plaintiff and Appellant

                    Tour-Sarkissian Law Offices, Paul Tour-Sarkissian and
                    Phil Foster for Defendant and Respondent